INDIANA NATIONAL BANK OF INDI-
ANAPOLIS, As Trustee of the Trust
Called the Oliver W. Storer Scholarship
Foundation, Created by the Will of
Oliver W. Storer, Deceased, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. IP 59-C-221.

United States District Court
S. D. Indiana,
Indianapolis Division.

Jan. 31, 1961.

White, Haymond, Pierce & Beasley,
by George W. Pierce and Charles V.
Retherford, Jr., Muncie, Ind., for plain-
tiff.

Don A. Tabbert, U. S. Atty., and James
L. Miller, Asst. U. S. Atty., Indianapolis,
Ind., for the United States.

STECKLER, Justice.

This cause having come on for trial
without a jury and the court having
heard evidence and considered the stipu-
lations of the parties, now specifically
finds the facts and states separate con-
clusions of law as follows:

### Findings of Fact

1. The plaintiff, The Indiana National
Bank of Indianapolis, as Trustee of the
Trust called The Oliver W. Storer Schol-
arship Foundation, created by the will of
Oliver W. Storer, deceased, of Delaware
County, Indiana, was the sole residuary
beneficiary under said will. Said Oliver
W. Storer died on April 22, 1953 and
his will was admitted to probate by the
Delaware Circuit Court of Delaware
County, Indiana, on April 23, 1953. Sub-
sequently plaintiff accepted said Trust
and having qualified as said Trustee was
issued Letters of Trusteeship by the
Clerk of said Delaware Circuit Court.

2. On December 20, 1957, said Dela-
ware Circuit Court ordered The Indiana
National Bank of Indianapolis, as Execu-
tor of said will of Oliver W. Storer, de-
ceased, to distribute and deliver to the
plaintiff the remaining balance of the as-
sets of the estate, including a claim for
refund of a portion of the federal estate
taxes paid from the assets of said estate,
and pursuant to said order, The Indiana
National Bank of Indianapolis, as such
Executor, did assign to the plaintiff by a
written assignment dated January 6,
1958, all of its right, title and interest in
and to said claim for refund of any fed-
eral estate taxes paid by said Executor to
the District Director of Internal Revenue
of Indianapolis, Indiana, because of any
erroneous assessment of federal estate
taxes against said estate. Thereafter,
said Executor filed its Supplemental Re-
port of Distribution and Petition for Dis-
charge and on January 24, 1958, said
Delaware Circuit Court entered an order
approving said Supplemental Report and
discharging the Executor.

3. On July 20, 1954, said Executor
filed the estate tax return on the estate
of said Oliver W. Storer with the Dis-

trict Director of Internal Revenue in Indianapolis, Indiana, and paid the estate tax shown thereon in the amount of $25,392.41. On April 9, 1956, said District Director notified said Executor that a deficiency assessment had been determined on said return in the amount of $90,602.98, together with interest in the amount of $9,194.34, making a total of $99,797.32. On April 11, 1956 said Executor paid said District Director $375.56 in partial payment of this deficiency and on April 29, 1956, U. S. Treasury 2½% Bonds held in the estate were redeemed by the Treasury Department, Bureau of Public Debt, in the amount of $99,415.03 and the proceeds applied on this estate tax deficiency. On May 11, 1956, the balance of the deficiency in the amount of $6.73 was paid to said District Director by said Executor. On January 22, 1958, and within two years of the date of the payment of the deficiency assessment, the plaintiff as the sole residuary beneficiary, under the will of Oliver W. Storer, deceased, filed with the District Director of Internal Revenue, Indianapolis, Indiana, its claim for refund of a portion of this estate tax in the amount of $54,052.73, or such greater amount as was legally refundable, plus interest from April 29, 1956. The claim was based on the contention that said District Director had erred in reducing the amount of the marital deduction (Estate Tax Return—Schedule M) from $272,164 to $4,875 by failing to include the value of the property which was paid or delivered to decedent's wife, J. Pearl Storer pursuant to a Settlement Agreement dated October 14, 1955. On June 11, 1958, said District Director mailed to the plaintiff by registered letter a written notice of disallowance in full of said claim for refund. This court has jurisdiction of this action which was timely filed on August 14, 1959 and which presents for determination of this court the same issues which were raised by the claim for refund.

4. The following items in the federal estate tax return and in the agent's reported computation in relation thereto, are true and correct.

| | | |
|---|---|---|
| A. Total Gross Estate (A-1) | | $ 3,061,901.28 |
| B. Deductions: | | |
| Funeral and administration expenses (J-1) | | $ 247,802.93 |
| Debts of decedent (K-2) | | 4,551.09 |
| Total | | $ 252,354.02 |
| C. Computation of charitable deduction: | | |
| I. Value of gift to Oliver W. Storer Scholarship Foundation. | | |
| 1. Gross estate | | $ 3,061,901.28 |
| 2. Deductions: | | |
| Debts and charges | | 252,354.02 |
| Transfers | | 6,514.55 |
| Specific bequests to DePauw and Taylor Universities | | 150,000.00 |
| Non-charitable gifts: | | |
| T. H. Hafner | | 25,000.00 |
| Mary Smith | | 50,000.00 |
| Household goods | | 1,241.00 |
| Indiana inheritance tax | | 16,190.54 |
| Gross of annuities to DePauw University | | 255,000.00 |
| 3. Less value of four-year annuity to eleven children of nephews and nieces | | 41,095.10 |
| II. Specific charitable gifts: | | |
| 1. DePauw University | | 100,000.00 |
| 2. Taylor University | | 50,000.00 |
| 3. Value of remainder to DePauw after deduction of value of annuities to six individuals payable out of $255,000.00 | | 134,542.51 |

5. The pertinent portion of the will of O. W. Storer read as follows and the will contained no other provision for the benefit of J. Pearl Storer:

## "Last Will And Testament
## Of
## Oliver W. Storer

"I, Oliver W. Storer, of the City of Muncie, Delaware County, in the State of Indiana, hereby make publish and declare this my last will and testament, in manner and form following:

"Item I. I direct that all of my just debts and expenses of my last sickness and funeral be paid as soon after my decease as conveniently can be done.

"Item II. Subject to the specific bequests hereinafter made, I give, devise and bequeath to Indiana National Bank, of Indianapolis, Indiana, and to its successors in trust, all the rest, residue and remainder of my estate, real, personal and mixed, of every kind whatsoever and wheresoever situated of which I may die

seized or possessed, In Trust, Nevertheless, for the uses and purposes and with the powers and subject to the restrictions, duties and limitations following:

"Section 1.
"Name

"The trust hereby created shall be known as 'The Oliver W. Storer Scholarship Foundation.'

"Section 2.
"Distribution.

"a. The Trustee shall pay to or for the benefit of my wife, J. Pearl Storer, beginning immediately after my death and continuing throughout her lifetime, an annuity in the sum of Twenty-Five Thousand Dollars ($25,000.00) per annum, payable in such installments as my wife may request. In the event of the inability of my wife to manage her personal affairs on account of illness or infirmity, I direct that the Trustee cause proper provision to be made for her out of the annuity herein provided for her.

"b. The Trustee, subject to the other payments provided to be made herein, shall pay out of the net income of said trust such amounts, at such times and to such parties as it shall from time to time be ordered or directed to do, by a committee to be designated as 'The Storer Scholarship Committee.' "

6. On October 13, 1953, the Trust Committee of The Indiana National Bank of Indianapolis, Indianapolis, Indiana, approved a proposal that:

a. the right of J. Pearl Storer to contest the will of Oliver W. Storer, and

b. the right of J. Pearl Storer to take under the law of Indiana rather than under the will of Oliver W. Storer,

to be compromised for a consideration of $240,000 in addition to $10,000 which had already been advanced to her, plus a conveyance of the Storer residence in Muncie, including the contents thereof. At this meeting it was stated that it was understood that J. Pearl Storer contemplated establishing a trust in the amount of $240,000, the income from which would go to The Oliver W. Storer Scholarship Foundation, with Mrs. Storer having the right to withdraw up to $25,000 of the principal in any one year.

7. On October 14, 1953, J. Pearl Storer, surviving spouse of said Oliver W. Storer, signed an instrument entitled "Settlement Agreement," which reads as follows:

"Settlement Agreement

"This Agreement, made and entered into this 14th day of October, 1953, by and between The Indiana National Bank of Indianapolis, as Executor and Trustee under the last will and testament of Oliver W. Storer, deceased, hereinafter referred to as 'First Party,' and J. Pearl Storer, of Delaware County, Indiana, hereinafter referred to as 'Second Party,'

"Witnesseth That:

"1. Whereas, the Second Party is the surviving spouse of Oliver W. Storer, late of Delaware County, Indiana, and the sole provision for the benefit of Second Party under the will of said decedent is an annuity of $25,000.00 per annum, payable in such installments as the Second Party shall request, and a provision that in the event of the inability of the Second Party to manage her personal affairs on account of illness or infirmity, the First Party will cause provision to be made for her out of said annuity, and

"2. Whereas, Second Party, as the surviving spouse of said decedent, has the right under the laws of the State of Indiana to elect to take one-third of the estate of said decedent in lieu of the provisions made for her by his will, and, if she should file her said election to take under the laws of the State of Indiana, she would be entitled to an estimated sum in excess of $1,000,000.00 as

her one-third share of said estate, and

"3. Whereas, the Second Party is the sole heir at law of said decedent and as such has the right, under the statutes of the State of Indiana, to file an action for a contest of the will of said decedent at any time prior to April 22, 1954, and, if she should successfully prosecute such an action, she would be entitled to the entire net estate of said decedent, and

"4. Whereas, the parties hereto desire to compromise, settle and adjust the rights of the Second Party to take under the laws of the State of Indiana as surviving spouse of said decedent and her right to contest the will of said decedent as his sole and only heir at law, as hereinabove set forth,

"It Is Therefore Agreed By And Between The Parties Hereto:

"1. That the First Party shall pay to the Second Party the total sum of $250,000.00 out of the estate of said decedent in cash including $10,000.00 heretofore advanced. The balance of said sum shall be paid upon execution of this agreement and approval thereof by the Delaware Circuit Court of Delaware County, Indiana.

"2. Contemporaneously with the execution of this agreement, First Party shall execute a deed and bill of sale to the Second Party for the dwelling house of the decedent, now occupied by the Second Party, together with all household goods and personal effects of the decedent therein situated.

"3. The First Party shall pay out of the residuary estate of the decedent, all state and federal inheritance and estate taxes arising out of the passing or receipt of the property to be received by the Second Party under the terms of this agreement.

"4. The Second Party hereby accepts the provisions of Paragraphs 1, 2 and 3 hereof in full compromise and settlement of her right to elect to take one-third of the estate of said decedent as his surviving spouse and of her right to file and prosecute an action to contest the will of said decedent, and in full compromise and settlement of all of her rights under said will.

"In Witness Whereof, the parties hereto have hereunto subscribed their names the day and year first above written.

"The Indiana National Bank of Indianapolis, as Executor and Trustee under the last will and testament of Oliver W. Storer, deceased,

"By: /s/ W. S. Ritman
"Vice-President.
"/s/ J. Pearl Storer

"State of Indiana ⎫ SS:
"County of Delaware ⎭

"Before the undersigned Notary Public in and for said State, on October 15, 1953, personally appeared W. S. Ritman, Vice-President of The Indiana National Bank of Indianapolis, which executed the foregoing instrument, who acknowledged that the seal affixed to said instrument is the corporate seal of said corporation; that he did sign said instrument in behalf of said corporation and by authority of its Board of Directors, and that said act is the free act and deed of said corporation.

"(Seal) /s/ Dorothy P. Richman
"Dorothy P. Richman,
Notary Public
"My Commission Expires May 8, 1956.

"State of Indiana ⎫ SS:
"County of Delaware ⎭

"Before the undersigned Notary Public in and for said State, on October 14th, 1953, personally appeared the above named J. Pearl Storer, and acknowledged the volun-

tary execution of the foregoing instrument.

"/s/ Thecla T. Hafner
"Notary Public
"(Seal)
"My commission
Expires Oct. 7, 1954."

8. On October 15, 1953, said The Indiana National Bank of Indianapolis, as Executor and Trustee named in the will of Oliver W. Storer, filed its verified petition in said Delaware Circuit Court for authority to enter into said Settlement Agreement, stating:

(a) that the sole provision made for J. Pearl Storer, widow of Oliver W. Storer, in his said will was the annuity payable out of income provided in Item II, Section 2a of the will,

(b) that the widow had the right, under the laws of the State of Indiana, to elect to take one-third of the estate of her husband, or approximately $1,000,000.00, in lieu of the provision made for her in the will and also the right as sole heir, to file an action to contest the will and, if successful in such action, to take the entire estate,

(c) that J. Pearl Storer had offered to compromise both:

(1) her rights under the laws of Indiana, as surviving spouse, and

(2) her right to contest the will, by entering into said Settlement Agreement, and

(d) that Petitioner believed the terms of the agreement to be fair and reasonable and to the advantage of the estate and the residuary trust and its educational purposes and that Petitioner had secured the written approval of all members of "The Storer Scholarship Committee," described in Item II, Section 3 of said will, to its entering into said agreement.

9. On October 15, 1953, said Delaware Circuit Court entered its order finding that the allegations of fact made in said petition were true and authorizing the Petitioner, as said Executor and Trustee, to enter into the Settlement Agreement. On the same day, The Indiana National Bank of Indianapolis, as said Executor and Trustee, executed said Settlement Agreement and, pursuant thereto, executed and delivered to J. Pearl Storer its Executor's and Trustee's Deed conveying to her the dwelling house of Oliver W. Storer, which appeared on the Federal Estate Tax Return in Schedule A-1c, Item 3, and the household goods and personal effects which appeared on the Federal Estate Tax Return in Schedule F, and also delivered its Trust Department check payable to the order of J. Pearl Storer in the amount of $240,-000.

10. No attempt was made by anyone to evaluate the cash value of the annuity provided for J. Pearl Storer in her husband's will and the Settlement Agreement was executed for the purpose of securing for her a portion of the property to which she was entitled as his widow under the laws of the State of Indiana and of settling a controversy which had arisen between J. Pearl Storer and the Executor relating to the provision made in the will for her and was not executed for the purpose of placing any value on that provision.

11. On October 15, 1953, J. Pearl Storer delivered to The Indiana National Bank of Indianapolis, an instrument entitled "Indenture of Trust," by which J. Pearl Storer agreed to transfer the sum of $240,000 to The Indiana National Bank of Indianapolis, as Trustee, on the following terms:

A. To pay out of the corpus unto Donor during her lifetime such sums as she might request, not to exceed $25,000.00 in any one year.

B. To pay out of the corpus such sums of money as the Trustee might deem advisable for the use, maintenance, comfort and enjoyment of the Donor during her lifetime, if she became incapacitated for any reason.

C. To pay all the net income from the Trust to The Indiana National

Bank of Indianapolis, as Trustee of The Oliver W. Storer Scholarship Foundation.

D. At the death of Donor, to deliver all the residue of the corpus and undistributed income of said Trust to The Indiana National Bank of Indianapolis, as Trustee of The Oliver W. Storer Scholarship Foundation.

12. On October 16, 1953, J. Pearl Storer delivered to the payee her certified check drawn on The Merchants National Bank of Muncie, Muncie, Indiana, in the amount of $240,000 payable to the order of The Indiana National Bank of Indianapolis, in accordance with said Indenture of Trust.

13. J. Pearl Storer consulted with Thomas A. Gill, M.D., of Muncie, Indiana, on April 3, May 15, September 5, October 1, October 6, October 8, October 15 and October 19, in the year 1953, principally with regard to pain in her knees and hip. On October 6, 1953, Dr. Gill removed a skin cancer from her right arm and on October 15, 1953 he removed a tumor from her right temple. It was his normal practice to note any unusual mental conditions of his patients, if he observed any unusual mental condition, and during the consultations above referred to, he did not note any unusual mental conditions of Mrs. Storer.

After her husband's death, she was seventy-eight years old and was in apparent good health, in normally good physical condition considering her age, and in good mental state. She executed her will on August 1, 1953 and purchased a green air-conditioned Cadillac after her husband's death. She was able to understand what was going on about her, to transact ordinary business and to help her tax adviser by answering his questions. She made business decisions and ran her own farm of two hundred and forty acres.

14. Clarence E. Benadum, an attorney in Muncie, Indiana, had been a friend of both Mr. and Mrs. Storer for approximately forty years. He saw her three or four times a week both before and after Mr. Storer's death. He discussed with her, her rights under Mr. Storer's will, but he was not her attorney. He told her she was entitled to take the widow's portion or a third of his estate under the law of Indiana and that she should go up to the court house and sign for her third. Miss Thecla Hafner, who had been a personal and business secretary and adviser of both Mr. and Mrs. Storer since 1912 and who saw her two or three times a week both before and after Mr. Storer's death, told her three or four weeks after Mr. Storer's death that if she wasn't satisfied with his will, she could take one-third of his estate. She understood that she had that right.

15. She was displeased that she did not receive the residence and household goods and personal effects under Mr. Storer's will, and when she was told the Executor wanted her to pay rent or move after a year, she said she wasn't going to move and she wasn't going to pay rent.

16. She was told by Herbert P. Harrington, a certified public accountant of Muncie, who had been her accountant and business and tax adviser for nearly ten years, that the annuity provided for her in Mr. Storer's will would be subject to federal income taxes and would provide her with spendable income of from $14,000.00 to $16,000.00 and that this amount might not be enough to pay her expenses in case of full time hospitalization.

17. She had expressed a desire to reach some agreement with the Executor which would allow her to keep the house and furnishings, and personal effects and would provide enough money to take care of her. The Executor had indicated that it would endeavor to prepare an agreement reflecting Mrs. Storer's desires. Before the prepared Settlement Agreement was presented to her, Miss Hafner told her that if she couldn't reach an agreement with the Executor she would have to file her election to take under the law and she agreed with this. The Indiana National Bank of Indianapolis, as Executor, delivered the Settlement Agreement to Miss Hafner about a month before it was signed and Miss Hafner

talked the proposed agreement over with her and told her that if she wasn't satisfied with the agreement she could still think about taking under the law and she understood at the time that if she did not enter into the Settlement Agreement she still had the right to take one-third of the estate. Subsequently, she discussed the agreement with both Miss Hafner and Mr. Harrington. Mr. Harrington talked with her a few days before October 14, and told her that withdrawals from the voluntary trust would not be subject to income tax and recommended that she sign the Settlement Agreement. Miss Hafner also recommended that she sign the Settlement Agreement. She understood the Agreement and was pleased with it. She decided that the provisions of the Settlement Agreement would be adequate to take care of her during her lifetime and that's all she cared about. She executed it about a month after it was first delivered to her. She did not consult any attorney relating to the Agreement.

18. The schedule of all property for Indiana Inheritance Tax Appraisement was filed by the Executor in the estate of Oliver W. Storer on April 12, 1954. The fair market value of the property given J. Pearl Storer, his widow, was stated as $86,630 consisting of jointly held securities worth $4,875 and the balance of $81,755 being the commuted value of the income annuity provided in the will of the decedent computed according to the Indiana law.

19. Theodore Brown, the Delaware County Assessor, was directed by order of the Delaware Circuit Court, to appraise said property pursuant to the inheritance tax law of the State of Indiana and he filed his written report and appraisal with said court on April 20, 1954. He found the Indiana inheritance tax due on the property passing to J. Pearl Storer, widow of the decedent, to be based on the jointly held property of $4,875 (Indiana Inheritance Tax Schedule B-3 and Federal Estate Tax Return Schedule E) and also on one-third of the net estate or $973,514.65.

20. On April 20, 1954, the Delaware Circuit Court ordered said Appraiser's Report set for hearing on May 13, 1954 and ordered the Clerk to issue Notice of Hearing to all persons known to be interested, and a written notice pursuant to this order was issued.

21. On July 30, 1954, the Delaware Circuit Court, having taken testimony and considered the inventory, appraisal report and the whole record and having heard all parties desiring a hearing, and being fully advised in the premises, found that the amount of property passing to J. Pearl Storer was $86,630 as set forth in the schedule of property filed by the Executor.

22. On August 12, 1954, The Indiana Department of State Revenue, Inheritance Tax Division, by Edwin K. Steers, Attorney General and George B. Hall, Deputy Attorney General of the State of Indiana, filed with the Delaware Circuit Court its petition for rehearing, reappraisement and redetermination of inheritance and transfer taxes in the matter of said estate, and said petition reads as follows:

"State of Indiana ⎱ SS: In The Delaware
Delaware County ⎰ Circuit Court

"In the Matter of
The Estate of,
Oliver W. Storer,  Estate No. P 53/83.
deceased.

"Petition For Rehearing, Reappraisement And Redetermination Of Inheritance And Transfer Of Taxes.

"Comes now the Indiana Department of State Revenue, Inheritance Tax Division by Edwin K. Steers, Attorney General and George B. Hall, Deputy Attorney General and ask the court for a rehearing, reappraisement and redetermination of inheritance and transfer of taxes due in the above estate, for the reason of said rehearing, Petitioners say:

"1. That in the order of the court dated the 30th day of July 1954, the gross value of said estate was erroneously determined.

"2. That in said order, the net value of said estate was erroneously determined.

"3. That the value of the distributive shares of the beneficiaries in said estate was erroneously determined.

"4. That the widow was allowed to take by law and not under the Will, as evidenced by her compromise of her interest, hence the order of the court showing Eighty-Six Thousand Six Hundred Thirty-Six and no/100 ($86,636.00) Dollars taxable, is in error.

"5. Inheritance that stem Item 9 of the Will are taxable on life expectancy.

"6. Additional administrator expenses of Twenty Thousand and no/100 ($20,000.00) Dollars are not deductible, as there is an item of expense of the trust as provided for in the Will.

"Wherefore, your Petitioners respectfully pray that a rehearing, reappraisement and redetermination be had of the inheritance and transfer taxes due in said estate; and the court hear such additional evidence and such additional citing of authorities as he may deem just and proper, and for all other proper relief in the premises.

> "Indiana Department
> Of State Revenue
> Inheritance Tax Division
>
> "/s/ Edwin K. Steers
> _____
> "Edwin K. Steers, Attorney General
>
> "/s/ George B. Hall
> _____
> "George B. Hall, Deputy
> Attorney General"

23. The matter of the determination of the Indiana Inheritance Tax on said estate was set for hearing by the Delaware Circuit Court on the petition of the Indiana Department of State Revenue Inheritance Tax Division and was submitted to the court for hearing and determination without the intervention of a jury. The court reconsidered all the records, proceedings and proof had and taken on the original hearing of the matter, including the Executor's Inventory and the Appraiser's Report and heard additional evidence and all parties desiring a hearing and arguments of their counsel and on February 22, 1955 entered its findings and order, which reads, in part, as follows:

"4. That pursuant to an order of this Court entered on October 15, 1953 The Indiana National Bank of Indianapolis, as Executor and as Trustee under the last will and testament of Oliver W. Storer, deceased, entered into a Settlement Agreement with Josie Pearl Storer, surviving spouse of said decedent, whereby and pursuant to which she accepted in full compromise, settlement and satisfaction of her rights under the laws of the State of Indiana, as surviving spouse of said decedent: (1) the sum of $250,000.00 in cash; (2) a bill of sale to the dwelling house of decedent, together with all household goods and personal effects of the decedent therein situated; and (3) an agreement by the Executor to pay all State and Federal Income and Estate Taxes arising out of the passing or receipt of said property under said agreement.

"That said dwelling house is described as follows:

"The East fifty (50) feet of Lot two (2) in Fanny Turner's Subdivision, an Addition to the City of Muncie, Indiana, known as 321 East Charles Street, Muncie, Indiana,

and at the date of decedent's death it had a fair market value of $15,000.00.

"That the household goods and personal effects of decedent had a fair market value at the date of decedent's death of $2,289.00.

"That said settlement agreement constituted to the extent of the consideration received by Josie Pearl Storer, an election to take her statutory interest in the estate of said decedent as his surviving spouse and as provided under the laws of the State of Indiana and the transfer to her of the property provided in said agreement by said Executor,

passed and transferred to her said property under the Statutes of the State of Indiana regulating intestate descent and said transfer is subject to the tax imposed by the provisions of the Indiana Inheritance Tax Law on the transfer of property by intestate descent. That to the extent, that the consideration received by Josie Pearl Storer was less than the full value of her statutory interest in the estate of said decedent, said agreement constituted a rejection and disclaimer of the excess value of said interest and the excess value of said interest was not passed or transferred to her and is not subject to the tax imposed by the provisions of the Indiana Inheritance Tax Law."

24. The division of the decedent's estate among his heirs and legatees was not in issue in the Indiana state inheritance tax proceedings.

25. The property received by Mrs. J. Pearl Storer in settlement of the described controversy was surrendered to her by the Executor in a bona fide recognition of enforceable rights in the decedent's estate, i. e., the right to take one-third of the estate absolutely as the surviving widow under Indiana law.

26. That of the $240,000 transferred by Mrs. J. Pearl Storer to The Indiana National Bank of Indianapolis, under the Indenture of Trust, dated October 14, 1953, she withdrew prior to her death on June 22, 1956, a total of $40,000 and the residue of $200,000, as well as the residence, household goods and personal effects, was included as a part of her gross estate in Schedule G (page 19), Schedule A (page 7) and Schedule F (page 17) of her Federal Estate Tax Return.

### Conclusions of Law

1. The law is with the plaintiff and against the defendant, United States of America and the plaintiff is entitled to recover of the defendant, United States of America, $54,052.73 with interest from April 29, 1956 because of an overpayment of the federal estate taxes on the estate of Oliver W. Storer, deceased, being a part of the deficiency assessment of federal estate taxes totaling $99,797.-32, which was made by the District Director of Internal Revenue in Indianapolis, Indiana, on or about April 9, 1956 and paid by application of the proceeds of the redemption of 1956 U. S. Treasury 2½% Bonds on April 29, 1956.

2. The execution and delivery of the Settlement Agreement by J. Pearl Storer on October 14, 1953 followed by its execution by The Indiana National Bank of Indianapolis, as Executor of and Trustee under the will of Oliver W. Storer, deceased, with the approval and authority of the Delaware Circuit Court of Delaware County constituted an election by J. Pearl Storer to renounce and reject all her rights under said will and to take her rights as the widow of Oliver W. Storer under the law of the State of Indiana to the extent of the property received by her under said Agreement in the amount of $267,289, which passed to her from the decedent so as to qualify for the marital deduction under Section 812(e) (3) of the 1939 Internal Revenue Code, 26 U.S.C.A. § 812(e) (3).

3. The decree of the Circuit Court of Delaware County in the state inheritance tax proceedings is not binding upon this court because the characterization of property interests for state tax purposes is not determinative of their property characterization for federal estate tax purposes. However, the decree is entitled to some weight.

4. The terminable interest provided for Mrs. J. Pearl Storer in the decedent's will was disclaimed by her and surrendered in settlement of a bona fide controversy involving the decedent's will. Therefore, the terminable interest did not pass to Mrs. Storer from the decedent, and she did not receive a cash payment in lieu thereof.

5. The property which was surrendered to Mrs. Storer pursuant to the Settlement Agreement was surrendered in a bona fide recognition of an enforceable right to take one-third of the estate absolutely as the surviving widow under

82

Indiana law, and did pass from the decedent to his surviving spouse. The full amount thereof, $267,289, qualified for the marital deduction under Section 812 (e) (3) of the 1939 Internal Revenue Code.

6. Any finding of fact which is properly a conclusion of law is to be deemed a conclusion of law, and any conclusion of law which is properly a finding of fact is to be deemed a finding of fact.

Counsel for plaintiff shall submit an appropriate judgment in accordance herewith.